# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HANOVER INSURANCE COMPANY | : |
| | : Case No.: |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| WEIRFIELD COAL, INC. f/k/a WEIRFIELD COAL & OIL, INC., PENN-STAR INSURANCE COMPANY, U.S. UNDERWRITERS INSURANCE COMPANY, KATHERINE CARBAJAL, Individually and as Parent and Natural Guardian of MATTHEW CARBAJAL, and MARVIN CARBAJAL, Individually, | : |
| Defendants. | : |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Hanover Insurance Company ("Hanover"), by and through its undersigned counsel, Kennedys CMK LLP, as and for its Complaint for Declaratory Judgment states as follows:

### INTRODUCTION

1. This is a Complaint for a Declaratory Judgment in which Hanover seeks a determination concerning the scope and nature of its obligations, if any, under the Commercial General Liability Part of a Commercial Line Policy issued to Defendant Weirfield Coal & Oil, Inc.

2. By this Complaint, Hanover seeks a declaration that it is not obligated to defend or indemnify Weirfield Coal, Inc. f/k/a Weirfield Coal & Oil, Inc. ("Weirfield Coal") with respect to the lawsuit captioned <u>Katherine Carbajal, Individually and as Parent and Natural Guardian of Matthew Carbajal, and Marvin Carbajal, Individually, v. Weirfield Coal, Inc. et al.</u>, pending in the New York Supreme Court, Kings County, Index 505469/2016 (the "Underlying Action").

1

## THE PARTIES

3.  Hanover is a New Hampshire corporation with its primary place of business in Worcester, Massachusetts.

4.  Weirfield Coal is a New York corporation with its primary place of business in Brooklyn, New York.

5.  Defendant Penn-Star Insurance Company ("Penn-Star") is a Pennsylvania corporation with its primary place of business in Bala Cynwyd, Pennsylvania.

6.  Defendant U.S. Underwriters Insurance Company is a North Dakota corporation with its primary place of business in King of Prussia, Pennsylvania.

7.  Nominal Defendants Katherine Carbajal, Matthew Carbajal, and Marvin Carbajal are residents of Brooklyn, New York.

## JURISDICTION AND VENUE

8.  This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

9.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a), as this action is between citizens of different states and the amount in controversy exceeds $75,000, because the damages sought in the Underlying Action exceed that amount.

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 as several of the defendants reside in the Eastern District of New York and many of the events at issue took place in the Eastern District of New York.

## FACTUAL BACKGROUND

**A.   Underlying Action**

11. The Underlying Action was commenced on or about April 8, 2016, by Katherine Carbajal, Matthew Carbajal, and Marvin Carbajal, who lived at a property neighboring the facility located at 386 Weirfield Avenue in Brooklyn, which was operated by

2

Weirfield Coal for the sale, storage and distribution of coal. A copy of the Complaint filed in the Underlying Action is attached hereto as Ex. A.

12. The Complaint in the Underlying Action alleges that Weirfield Coal intentionally, negligently, carelessly, and recklessly transported, delivered, stored, used, purveyed and dumped "harmful and/or toxic substances, including coal, its constituents, and radioactive elements," on Weirfield Coal's facility.

13. The Complaint in the Underlying Action alleges that Weirfield Coal failed to ensure that the toxins, including coal, coal dust, and its constituent parts, "were not leaching, migrating, surfacing, escaping, blowing and/or moving" from the facility.

14. The Complaint in the Underlying Action alleges that Weirfield Coal was responsible for exposing Mathew Carbajal to dangerous toxins and heavy metals, which "include coal and its constituent components such as arsenic, lead, mercury, manganese and radioactive elements."

15. The Complaint in the Underlying Action alleges that Matthew Carbajal "was exposed to harmful chemicals in utero and during childhood" and, as a result, has sustained and will in the future sustain bodily injuries.

16. The Complaint in the Underlying Action alleges that Kathrine Carbajal and Marvin Carbajal, individually and as parents of Mathew Carbajal, have suffered loss of support, loss of services, medical and other expenses and that all of their injuries "have been caused or contributed by exposure to harmful substances, pollutants and contaminants that have been released in the environment" from Weirfield Coal's facility.

17. The Complaint in the Underlying Action alleges that Weirfield Cole's conduct was grossly negligent, intentional, and conscious and was taken with callous and malicious disregard for the health, well-being and safety of Kathrine Carbajal, Marvin Carbajal, and Mathew Carbajal.

**B.     Hanover's Denial Letters**

18.     Hanover first received notice of the Underlying Action on February 7, 2017.

19.     By letter dated February 8, 2017, Hanover declined to participate in the defense or indemnity of Weirfield Coal in the Underlying Action based upon the Hanover Policy's Pollution Exclusion.

20.     Hanover's February 8, 2017 letter also stated that to the extent that the Underlying Action alleged that Weirfield Coal's actions were intentional, the claims asserted against Weirfield Coal in the Underlying Action did not constitute an "occurrence" as defined by the Hanover Policy.

21.     By letter dated July 9, 2019, Penn-Star tendered Weirfield Coal's defense and indemnity in the Underlying Action to Hanover.

22.     By letter dated August __, 2019, Hanover denied Penn-Star's tender.

**D.     The Hanover Policy**

23.     Hanover issued Commercial Line Policy No. ZHY 9600167 01 to Weirfield Coal & Oil Inc., with a policy period of June 30, 2012 to June 30, 2013 (the ("Hanover Policy."). A certified copy of the Hanover Policy is attached hereto as Ex. B.

24.     The Hanover Policy, as amended, contains the following relevant insuring agreement:

> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> **SECTION I – COVERAGES**
> **COVERAGE BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> A.     Paragraph **1. Insuring Agreement of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> **1.     Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or suit" that may result. But:

    \*   \*   \*

    b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

    \*   \*   \*

25.    The Hanover Policy contains the following relevant Definitions:

**SECTION V – DEFINITIONS**

    \*   \*   \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

5

* * *

15. "Pollutants" means any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

26. The Hanover Policy contains a Pollution Exclusion, which provide in pertinent part, as follows:

**2. Exclusions**

This insurance does not apply to:

* * *

**f.    Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the

6

                owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i)    Any insured; or

    (ii)    Any person or organization for whom you may be legally responsible; or

(d)    At or from any premises, site or location which any insured or any contractor subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

7

      (i)      "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii)     "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

     (iii) "Bodily injury" or "property damage arising out of heat, smoke or fumes from a "hostile fire".

                      \*      \*      \*

## AS AND FOR A FIRST CAUSE OF ACTION
## AS TO ALL DEFENDANTS
## (DECLARATORY JUDGMENT)

27. Hanover repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

28. The Hanover Policy's Pollution Exclusion provides that the Policy does not apply to "bodily injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" (a) at or from any premises, site or location which is or was time owned or occupied by, or rented or loaned to, any insured; or (b) at or from any premises, site or location which any insured is performing operations if the "pollutants" are brought on or to the premises, or location in connection with such operations by such insured.

29. The Hanover Policy defines "pollutants" as "any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

30. The Underlying Action alleges that Weirfield Coal operated a facility for the sale, storage and distribution of coal and that it transported, delivered, stored, used, purveyed and dumped "harmful and/or toxic substances, including coal, its constituents, and radioactive elements" on its facility.

31. The Underlying Action alleges that Weirfield Coal failed to ensure that the toxins were not "leaching, migrating, surfacing, escaping, blowing and/or moving" from the facility.

32. The Underlying Action alleges that Weirfield Coal was responsible for exposing Mathew Carbajal to dangerous toxins and heavy metals "such as arsenic, lead, mercury, manganese and radioactive elements."

33. The Underlying Action alleges that Matthew Carbajal, sustained bodily injuries due to his exposure to "harmful substances, pollutants and contaminants that have been released in the environment" from Weirfield Coal's facility.

34. Accordingly, the Underlying Action alleges "bodily injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from a premises which is or was owned or occupied by Weirfield Coal and/or from a premises which Weirfield Coal was performing operations where the "pollutants" were brought onto the premises by Weirfield Coal.

35. As a result, the claims in the Underlying Action are excluded from coverage by the Hanover Policy's Pollution Exclusion.

36. An actual and justifiable controversy exists regarding the nature and extent of the insurance coverage or other rights owed to Weirfield Coal, if any, by Hanover.

37. Hanover has no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
## AS TO ALL DEFENDANTS
## (DECLARATORY JUDGMENT)

38. Hanover repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

39. The Insuring Agreement of the Hanover Policy provides that Hanover will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies.

40. The Insuring Agreement further provides that the insurance applies to "bodily injury" only if the alleged "bodily injury" is caused by an "occurrence."

41. The Hanover Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

10

42. The Complaint in the Underlying Action alleges that Weirfield Cole's conduct was intentional and conscious and was taken with callous and malicious disregard for the health, well-being and safety of Kathrine Carbajal, Marvin Carbajal, and Mathew Carbajal.

43. Accordingly, to the extent that claims in the Underlying Action do not arise from "bodily injury" caused by an "occurrence," Hanover has no obligation to defend or indemnify Weirfield Coal with respect to the Underlying Action.

44. An actual and justifiable controversy exists regarding the nature and extent of the insurance coverage or other rights owed to Weirfield Coal, if any, by Hanover.

45. Hanover has no adequate remedy at law.

**WHEREFORE**, Hanover respectfully requests that:

1. The Court enter judgment declaring that Hanover Insurance has no duty to defend Weirfield Coal under the Hanover Policy in connection with the claims asserted in the Underlying Action;

2. The Court enter judgment declaring that Hanover Insurance has no duty to indemnify Weirfield Coal under the Hanover Policy in connection with the claims asserted in the Underlying Action;

3. The Court award such other and further relief as it deems just, proper and equitable.

Dated: August 2, 2019

    Kennedys CMK LLP

    /s/
    _____
    Christopher R. Carroll
    Daniel Pickett
    *Attorneys for Plaintiff*
    *Hanover Insurance Company*
    570 Lexington Avenue – 8th Floor
    New York, New York 10022
    (212) 252-0004
    (212) 252-0444 – Fax