UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
**HANOVER INSURANCE COMPANY,** :
:
                Plaintiff, :
:
    - against - :    **MEMORANDUM**
:    **DECISION AND ORDER**
**WEIRFIELD COAL, INC. f/k/a WEIRFIELD** :
**COAL & OIL, INC. PENN-STAR INSURANCE**     1:19-CV-04456 (AMD) (ST)
**COMPANY, U.S. UNDERWRITERS AND** :
**INSURANCE COMPANY, KATHERINE** :
**CARBAJAL, Individually and as Parent and** :
**Natural Guardian of MC, and Marvin Carbajal,** :
**Individually,** :
:
                Defendants. :
-------------------------------------------------------------- X
**PENN-STAR INSURANCE COMPANY,** :
:
                Counterclaimant, :
:
    - against - :
:
**HANOVER INSURANCE COMPANY,** :
:
                Counterclaim Defendant. :
-------------------------------------------------------------- X
**PENN-STAR INSURANCE COMPANY,** :
:
                Cross-Complainant, :
:
    - against - :
:
**WEIRFIELD COAL, INC.,** :
:
                Cross-Defendant. :
-------------------------------------------------------------- X
**PENN-STAR INSURANCE COMPANY,** :
:
                Third-Party Plaintiff, :
:
    - against - :
:
**MARKEL INSURANCE COMPANY, et al.,** :
:
                Third-Party Defendants. :
-------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

This declaratory judgment action stems from a complex insurance dispute among several different insurance carriers seeking to determine which insurance policy—if any—is operative for a state court personal injury action. On August 2, 2019, Hanover Insurance Company filed a complaint seeking a declaration that it has no obligation to indemnify or defend the underlying state court action. (ECF Nos. 2-3.) On September 11, 2019, Penn-Star Insurance Company ("Penn-Star") answered and filed a third-party complaint against other insurers not originally named in this action seeking a declaration that it has no obligation to indemnify or defend the underlying action. (ECF Nos. 20-21.) On January 6, 2020, one of the third-party defendants, Markel Insurance Company ("MIC"), moved to dismiss Penn-Star's third-party complaint, and Penn-Star opposed. (ECF Nos. 62-64.) For the reasons that follow, MIC's motion to dismiss is granted in its entirety.

## BACKGROUND

### I. Procedural History

On April 8, 2016, Katherine and Marvin Carbajal filed a personal injury action in Kings County Supreme Court, both individually and on behalf of their son, M.C., in connection with the family's alleged exposure to coal pollutants released by defendant Weirfield Coal's coal distribution business in Brooklyn (the "Carbajal Action"). *See Carbajal v. Weirfield Coal, et al.*, Ind. No. 505469/2016 (N.Y. Sup. Ct. 2016) (ECF No. 62-3). At the time, the Carbajals lived on the same street as Weirfield Coal's coal sale, storage and distribution facility. (ECF No. 62-3 ¶ 10.) In their complaint, they allege that Weirfield Coal and its management company, Poma Realty, exposed them to toxic fugitive coal dust, (*id*. ¶¶ 25-47), and that Ms. Carbajal was exposed to these pollutants during her pregnancy, which caused her son to develop a congenital

heart defect and other serious medical conditions requiring ongoing treatment and care. (*Id*. ¶¶ 37-55.)

On August 12, 2016, Weirfield Coal filed a breach of contract action against one of its insurers, Penn-Star Insurance Company, in Pennsylvania state court. (ECF No. 21 ¶ 13.)[1] In its complaint, Weirfield Coal alleged that Penn-Star owed a duty to defend and indemnify Weirfield Coal in the Carbajal Action. (*Id.*) Pennsylvania's First Judicial Department issued an interim order ruling that Penn-Star owed a duty to defend Weirfield in the Carbajal Action. (*Id*. ¶¶ 13-15.)

After the Pennsylvania state court's decision, Penn-Star tendered coverage to Hanover Insurance Company for the Carbajal Action. (*Id.* ¶ 16.) On August 2, 2019, Hanover filed a declaratory judgment action in this Court seeking a declaration that it did not owe a duty to defend or indemnify the Carbajal Action.[2] (ECF No. 2.) On September 11, 2019, Penn-Star filed a third-party complaint against other alleged insurers, including Markel Insurance Company ("MIC"), as "necessary and indispensable parties" under Rule 19 of the Federal Rules of Civil Procedure. (ECF No. 21 ¶ 17.)[3] Penn-Star alleges that its policies are "not concurrent with the date of loss" and that other insurers, including MIC, are liable for some or all of Weirfield's costs in the Carbajal Action. (*Id.*) Penn-Star seeks "a declaration finding that Markel Insurance is required to reimburse Penn-Star for its defense and/or indemnity costs that have been or may be incurred in the defense of the underlying tort action, along with a declaration of whose

---

[1] After the defendants objected to venue, the Pennsylvania court transferred the case to the Court of Common Pleas for Montgomery County. The action was then re-filed in Montgomery County on May 24, 2017. (ECF No. 21 ¶ 13.)

[2] In addition to naming Weirfield Coal, Penn-Star and the Carbajals as defendants, Hanover sued U.S. Underwriters and Insurance Company. Because these parties are not relevant to MIC's motion, I do not discuss claims involving the other third-party defendants and counter-defendants.

[3] Of the two Markel entities named in this action, only Markel Insurance Company—and not Markel International—has moved to dismiss.

3

policy(ies) are primary in relation to the others." (*Id.* ¶ 30.) On January 6, 2020, MIC moved to dismiss Penn-Star's third-party complaint. (ECF No. 62.)

## II. MIC's Insurance Policy with Weirfield Coal

In 2017, MIC issued a pollution liability insurance policy to Weirfield Coal.[4] The policy took effect on June 30, 2017, and covered occurrences between June 30, 2017 and June 30, 2018. (ECF No. 62-5.) MIC's policy covers "bodily injury" and "property damage" under the following conditions:

> (1) The "bodily injury" or "property damage" is caused by a "pollution condition" arising out of "your work" that takes place in the "coverage territory"; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) The "bodily injury" or "property damage" arises out of "your work" performed during the policy period, except for "bodily injury" or "property damage" arising out of the "completed operations" of "your work."
>
> (4) Prior to the policy period, no insured . . . and no "responsible insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or "responsible insured" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(ECF No. 62-5 at 36-37.) The policy also excludes coverage for "Known Circumstances and Non Disclosure," defined as:

> "Bodily injury" or "property damage" arising from any "pollution condition" caused by "your work" which occurred prior to the inception date of this policy, if any "responsible insured" knew or could have reasonably foreseen that such "pollution condition" would give rise to a "claim" and did not disclose such to us.

(*Id*. at 37.)

---

[4] Neither party asserts, and Penn-Star does not plead, that Weirfield Coal has ever filed a claim or sought coverage from MIC for the Carbajal Action.

4

**LEGAL STANDARD**[5]

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must be construed in the light most favorable to the non-moving party. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

A court reviewing a Rule 12(b)(6) motion to dismiss "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)); *see also Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599 (E.D.N.Y. 2017) ("A document is integral to the complaint where the plaintiff "(1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint.") (citations and quotations omitted); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) (a document is "incorporated by reference" if the complaint makes "a clear, definite and substantial reference to the document[]") (citation and quotations omitted).

When a party submits additional evidence in connection with a motion to dismiss, "a district court must either 'exclude the additional material and decide the motion on the complaint

---

[5] The parties agree that New York law governs in this case. Under New York choice-of-law rules, "'where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law.'" *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (quoting *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (alterations in original)). *See also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'") (citations omitted). Thus, I apply New York law to Penn-Star's third-party claims.

5

alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Potente v. Citibank, N.A.*, 282 F. Supp. 3d 538, 543 (E.D.N.Y. 2017) (citations omitted). Both parties include exhibits with their motion papers, but neither party requests that I convert this motion into a summary judgment motion. I therefore consider only exhibits that are integral to the complaint or incorporated in it by reference: (1) the Carbajals' state court complaint and (2) MIC's policy with Weirfield Coal.[6]

## DISCUSSION

MIC argues that the third-party complaint should be dismissed because its insurance agreement with Weirfield Coal took effect a year after the Carbajal Action was filed, and explicitly excludes coverage for both occurrences that happened before the policy period and occurrences known to the insured party before coverage took effect. Penn-Star opposes and argues that dismissal is premature because the scope of MIC's coverage cannot be determined as a matter of law.

A court resolving a dispute over insurance coverage must start with the language of the policy. *See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). "Insurance policies are contracts to which the ordinary rules of contractual interpretation apply." *David Lerner Associates, Inc. v. Philadelphia Indem. Ins. Co.*, 934 F.

---

[6] In its opposition to MIC's motion, Penn-Star attaches deposition transcripts from related state court proceedings and cites portions of these transcripts to buttress their claims. I do not consider these transcripts because they are not integral to the complaint or incorporated by reference. A court deciding a 12(b)(6) motion is not permitted to make findings of fact beyond a party's pleadings. *See Glob. Network Commun., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (district court "committed reversible error when, in ruling that the complaint failed to state a claim for which relief could be granted, it considered matters outside plaintiff's complaint," including sworn testimony from another proceeding).

Supp. 2d 533, 540 (E.D.N.Y. 2013), *aff'd*, 542 Fed. App'x. 89 (2d Cir. 2013) (quoting *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008)). "Courts must [] avoid construing conflicting provisions and ambiguities within a policy in such a manner as to negate certain coverages, or in ways that render coverage provisions mere surplusage." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004); *Am. Empire Surplus Lines Ins. Co. v. Colony Ins. Co.*, 16-CV-7946, 2017 WL 4857595, at *3 (S.D.N.Y. Oct. 25, 2017), *aff'd*, 744 F. App'x 32 (2d Cir. 2018) (citing *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)) ("[c]ourts are to construe the words of the policy in a manner that gives meaning to all language, and leaves no provision without force and effect.").

"[T]he threshold question is whether the contract is ambiguous," *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011), and "[t]he determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 33 (2d Cir. 1999) (quoting *In re Prudential Lines, Inc.*, 158 F.3d 65, 77 (2d Cir. 1998)). If the contract is unambiguous, courts should enforce it as written. *See Parks Real Estate*, 472 F.3d at 42. However, "ambiguity does not exist 'simply because the parties urge different interpretations.'" *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001) (quoting *Seiden Assocs. Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). If the contract terms are unambiguous, the court must interpret them according to their "plain and ordinary meaning," and enforce them as written. *Sunrise One, LLC v. Harleysville Ins. Co. of New York*, 293 F. Supp. 3d 317, 325-26 (E.D.N.Y. 2018).[7]

---

[7] New York law makes clear that in order to negate coverage, the exclusion must be "stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case

7

MIC's policy took effect on June 30, 2017—fifteen months after the Carbajal Action was filed. The policy specifically limits coverage to bodily injury or property damage that "occurs during the policy period" and "arises out of . . . work[] performed during the policy period[.]" (ECF No. 62-5 at 36-37.) The policy also excludes coverage if an insured party knew prior to the policy period "that the 'bodily injury' or 'property damage' had occurred, in whole or in part." (ECF No. 62-5 at 37.) Construing the facts in the light most favorable to Penn-Star, as I must on a motion to dismiss, these terms are not ambiguous. MIC's policy took effect a year after the state tort action was filed. Its plain language excludes coverage for any injuries or damages that occurred outside of the policy period and for any property damage or injuries known to Weirfield Coal prior to June 30, 2017. Under any reasonable interpretation of these terms, MIC's policy does not apply to the Carbajal Action.

Penn-Star's challenges to the plain language of MIC's policy are unpersuasive. Penn-Star appears to argue that the MIC policy may still be triggered even if the policy was issued after the Carbajal Action was filed, because the policy "does not contain any requirement that the injury causing event occur during its policy term." (ECF No. 64 at 13.) But this interpretation is not reasonable, and is at odds with the plain language of MIC's policy, which limits coverage to bodily injury or property damage that "occurs during the policy period" and "arises out of . . . work[] performed during the policy period[.]" (ECF No. 62-5 at 36.) The cases Penn-Star cites in support of its position that a liability policy can apply to losses that take place before the

---

and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Parks Real Estate* at 42 (quoting *Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York*, 241 A.D.2d 66, 71 (1st Dep't 1998)). New York law "is highly favorable to insureds" in the interpretation of exclusionary clauses. *Pioneer Tower Owners Ass'n v. Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 306 (2009); s*ee also Parks Real Estate* at 42 (under New York insurance law, "the burden, a heavy one, is on the insurer, and if the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer") (alterations and citations omitted).

8

policy term do not change this analysis. *See Nat'l Cas. Ins. Co. v. Mount Vernon*, 128 A.D.2d 332 (2d Dep't 1987); *Labate v. Liberty Mut. Fire Ins. Co.*, 19 A.D.3d 652 (2d Dep't 2005). Both cases involved insurance policies which took effect *prior* to when the underlying suit was filed, and involved occurrences that took place at least in part during the policy period.

According to Penn-Star, the MIC policy covers the Carbajal Action because the underlying action pleads a continuous tort that began before 2016 and extends into the present, and thus overlaps with the MIC policy period. Penn-Star points to paragraph 10 of the Carbajal complaint, which it claims is evidence that the damages alleged in the Carbajal Action are covered by MIC's policy. But even construing the pleading in Penn-Star's favor, paragraph 10 states only that, as of 2016, the Carbajals resided at the same address, adjacent to Weirfield Coal's facility. (ECF No. 62-3 ¶ 10.) The Carbajal complaint does not plead any future or ongoing harm. Nor does it plead any harm that extends into or through the MIC policy period in 2017 and 2018.[8]

Dismissal is appropriate in any event, because the plain language of the MIC policy excludes any occurrences that took place, in whole or in part, during the policy period, if an insured party "knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred[.]" (ECF No. 62-5 at 36-37.) "An insurer may disclaim coverage for a loss which occurred prior to the inception of an insurance policy and which was fully known to the insured before the commencement of coverage." *Abraham Nat. Foods Corp. v. Mt. Vernon Fire Ins. Co.*, 84 A.D.3d 1281, 1282 (2d Dep't 2011) (citations omitted). The Carbajals sued Weirfield

---

[8] While not addressed in Penn-Star's opposition, some of the Carbajals' allegations, including trespass claims, are alleged to have "continue[d] to this day and [to be] likely to continue into the future." (ECF No. 62-3 ¶ 23.) But a general allegation that the injuries alleged in the complaint existed in April of 2016, and are "likely to continue into the future," is not sufficient to establish or plead a continuous tort, let alone one that extends fifteen months into the future.

9

Coal in April of 2016—a full fifteen months before the MIC policy took effect. Weirfield knew about any loss or injury pled in the Carbajals' complaint by that time. Therefore, even accepting Penn-Star's assertion that these injuries and damages continued into the present and triggered MIC's policy, the plain language of the policy excludes coverage for any bodily injuries or property damages known "prior to the policy period," including "any continuation, change or resumption of such 'bodily injury or 'property damage' during or after the policy period . . . ." (ECF No. 62-5 at 37.)

Finally, Penn-Star argues that dismissal is premature because additional discovery is needed to determine the scope of the underlying occurrence in the outstanding declaratory judgment action. Specifically, Penn-Star argues that the "date of first exposure" and scope of the exposure present questions of fact that cannot be resolved on a motion to dismiss, and therefore preclude dismissing its claims against MIC. (ECF No. 64 at 18.) But regardless of the exact date of the loss, the facts as pled do not establish that the loss occurred between June 30, 2017 and June 30, 2018. Put differently, the MIC policy's plain language excludes coverage of the Carbajal Action no matter when the injury actually occurred. MIC's policy took effect a year after the Carbajals filed the state tort action; the policy explicitly disclaims any liability for any injuries or damages about which Weirfield knew before June 30, 2017. Under any reasonable interpretation of that contract's terms, MIC's policy does not apply to the Carbajal Action.

## CONCLUSION

For the reasons discussed above, I grant MIC's motion to dismiss Penn-Star's third-party complaint in its entirety.

**SO ORDERED.**

                                                                                            s/ Ann M. Donnelly
                                                                                            Ann M. Donnelly
                                                                                            United States District Judge

Dated: Brooklyn, New York
       July 24, 2020